IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **RUSSELL LEE BURKE** | § | |
| **TDCJ No. 02042066** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-19-CV-927-RP** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Russell Lee Burke's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Davis's Response (ECF No. 10), and Petitioner's Reply (ECF No. 12). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In December 2015, Petitioner was charged by indictment with one count of continuous sexual abuse of a child under fourteen and four counts of indecency with a child by sexual contact. The State sought to enhance punishment by alleging three prior felonies—two for Sexual Assault of a Child by One in a Position of Trust—from Colorado. (ECF No. 7-3 at 7-11.) In December 2015, a jury convicted Petitioner of four counts of indecency with a child by sexual contact, found the first sexual-assault enhancement allegation to be true, and sentenced Petitioner to life

1

imprisonment. *State v. Burke*, No. CR6998 (33rd Dist. Ct., Llano Cnty., Tex. Dec. 17, 2015.) (*Id.* at. 130-54.) Below is a summary of the factual background for Petitioner's conviction.

> Burke was charged with four counts of indecency with a child by touching the genitals of the victim, who was identified as Juvenile # 1, on four separate dates in 2012 and 2013. Juvenile # 1 testified at trial and described the incidents which occurred when she was around eight years old.
>
> Evidence was also admitted to establish Burke was convicted in Colorado in 1994 of two counts of sexual assault of a child and was a registered sex offender. The victim of the Colorado offenses testified she was nine years old when the offenses occurred.
>
> A third victim also testified to multiple incidents of sexual abuse by Burke that occurred from 1985 to 1988, when Burke was married to the victim's aunt. The victim testified the abuse started when she was seven and ended after she moved from Colorado to Texas when she was eleven. Burke was never charged or convicted with any offenses in relation to the third victim.

*Burke v. State*, No. 04-16-00220-CR, 2017 WL 1902064 (Tex. App.—San Antonio, May 10, 2017, pet. ref'd).

On May 10, 2017, Petitioner's conviction was affirmed on direct appeal. *Id.* Petitioner thereafter filed a pro se Petition for Discretionary Review (PDR) (ECF No. 7-20), which the Texas Court of Criminal Appeals (TCCA) refused on October 4, 2017, *Burke v. State*, No. PD-0567-17 (Tex. Crim. App. Oct. 4, 2017). Petitioner did not file a writ of certiorari in the United States Supreme Court. (ECF No. 1 at 2.)

On December 14, 2018, Petitioner filed a counseled state habeas corpus application and filed an amended application on January 24, 2019. (ECF No. 7-28 at 62-100.) Petitioner listed the following ten grounds of relief:

A. Appellate counsel provided ineffective assistance of counsel when counsel failed to

1. adequately brief the claim that the application of a statute allowing the admission of extraneous offenses on the issue of guilt violated the prohibition of ex post facto laws;

    2.  present the claim that the extraneous offenses offered on the issue of guilt were inadmissible under Texas Rules of Evidence 403;

    3.  present the claim that out-of-state extraneous offenses offered on the issue of guilt are inadmissible under Texas statutory law; and

B.  Trial counsel provided ineffective assistance of counsel when counsel failed to

    4.  object to the trial court's ruling that a life sentence could be imposed on the ground that the elements of the out-of-state convictions considered by the trial court were not substantially similar to the offenses for which Applicant was being prosecuted;

    5.  object to the admission of extraneous offenses on the ground that the offenses were not relevant to prove character conformity, or to any other issue relevant to the case;

    6.  introduce testimony that would have impeached the complainant's allegations;

    7.  object to expert testimony that effectively expressed an opinion that the complainant was truthful;

    8.  object to expert testimony that expressed an opinion that children are generally truthful;

    9.  object to the testimony of a purported expert who was not shown to be qualified to express an opinion regarding his interview with the complainant; and

    10. object to numerous instances of improper comments during the State's final argument.

(*Id*. at 84-100.) On January 28, 2019, the state habeas court ordered Petitioner's trial and appellate attorneys to respond to Petitioner's allegations. (*Id.* at 103.) On July 2, 2019, the state habeas court concluded that all of Petitioner's grounds for relief were unfounded and recommended denying them. (ECF No. 7-29 at 301-02.) The TCCA denied Petitioner's application without written order on September 4, 2019. (ECF No. 7-26.) *Ex parte Burke*, No. WR-90,100-01.

On September 20, 2019, Petitioner filed through counsel the instant federal habeas petition, raising the same claims from his state habeas application. (ECF No. 1.) On December 9, 2019, Respondent filed an answer to the petition to which Petitioner replied on January 20, 2010. (ECF Nos. 10, 12.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must

4

show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Analysis

#### A. Ineffective Assistance of Counsel

All of Petitioner's claims are based on allegations that his trial and appellate attorneys provided ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. AMEND. 6. Sixth Amendment claims concerning allegedly ineffective assistance of appellate and trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id*. at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the

"likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. As a result, the question is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

### i.  Ineffective Assistance of Appellate Counsel (IAAC)

Petitioner's first three claims allege his appellate counsel, Angela Moore, provided ineffective assistance. A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). As noted above, the *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief on his IAAC grounds, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and

(2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). He does neither.

*1. Ex Post Facto Clause*

In Petitioner's first claim, he alleges Ms. Moore provided ineffective assistance when she failed to adequately brief the argument that the State's solicitation of testimony from certain persons violated the Ex Post Facto Clause. At trial, the State introduced into evidence two convictions for Sexual Assault of a Child by One in Position of Trust that Petitioner received in Colorado in 1994. Petitioner argues that because the convictions were acquired prior to the enactment of article 38.37[1] of the Texas Code of Criminal Procedure, their admission into evidence violated the Ex Post Facto Clause. (ECF No. 12 at 3-12.)

In her affidavit before the state habeas court, Ms. Moore stated that she had adequately briefed the issue before the Court of Appeals; most of her supporting argument was in the section of her brief where she argued that article 38.37 was facially unconstitutional. She also stated that her argument was brief because she believed trial counsel had not done enough to preserve the issue for appellate review. (ECF No. 7-28 at 138-40.)

After noting the "argument section of [Petitioner]'s brief with regard to this issue consists of [] two sentences," the Court of Appeals held that article 38.37 § 2(b) does not violate the Ex Post Facto Clause:

> [W]e do not believe section 2(b) makes an action done before September 1, 2013, and which was innocent when done, criminal or punishable because section 2(b) does not allow extraneous offense evidence to be offered as substantive

---

[1] Under article 38.37, "evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b) (West 2019).

evidence of guilt. The State must still satisfy its burden of proof as to each element of the offense. Similarly, we do not agree that section 2(b) alters the legal rules of evidence to allow less or different testimony than the law required at the time of the commission of the offence in order to convict the defendant.

*Burke*, 2017 WL 1902064, at *4 (quoting *Baez v. State*, 486 S.W.3d 592, 599-600 (Tex. App.—San Antonio 2015, pet. ref'd). *See also Robisheaux v. State*, 483 S.W.3d 205, 213-15 (Tex. App.—Austin 2016, pet. ref'd).

In his state habeas application, Petitioner advanced the same argument that he does here: that courts in *Baez* and *Robisheaux* incorrectly analyzed Article 38.37 § 2(b); that based on Petitioner's analysis of the statute, it does violate the Ex Post Facto Clause; and that Ms. Moore was ineffective for failing to make this argument on appeal as it would have resulted in the reversal of Petitioner's conviction. (ECF No. 7-28 at 106-10.) The state habeas court considered this argument and concluded it was unfounded. (ECF No. 7-29 at 301-02.)

This Court's review of Petitioner's claims is guided by the AEDPA, under which Petitioner must show that the state habeas court's determination was an unreasonable application of *Strickland*. The Petitioner has failed to prove both prongs of the *Strickland* test: first, he has not shown that his appellate counsel was ineffective when she argued that article 37.38 violated the Ex Post Facto clause; second, he has failed to show there is a reasonable probability he would have prevailed on appeal with the legal argument he advances now. *See Smith*, 528 U.S. at 286 (to prevail on ineffective assistance of appellate counsel claim, a petitioner must show that counsel failed to file merits brief on nonfrivolous issues and that there is a reasonable probability that but for counsel's failure, petitioner would have prevailed on appeal); *see also Stewart v. Davis*, No. W-17-CA-244-RP, 2018 WL 9943425, at *14 (W.D. Tex. Aug. 27, 2018) ("The Texas appellate courts have routinely denied challenges to the use of evidence authorized by article 38.37";

concluding that because an appellate challenge to the statute was not likely to succeed, counsel was not ineffective for raising the claim). Accordingly, the Court concludes the state habeas court's determination was not unreasonable, and this claim is denied.

### 2. Extraneous Offenses (claims 2-3)

In claims 2-3, Petitioner argues that appellate counsel provided ineffective assistance when she failed to argue on appeal that the State's introduction of extraneous offenses from the mid-1980's and mid-1990's were (1) inadmissible under Texas Rule of Evidence 403[2] and (2) inadmissible when offered as evidence of guilt because they were committed in Colorado, not Texas. (ECF Nos. 1 at 7-8; 12 at 12-22.)

Prior to Petitioner's trial, the State filed a notice of its intent to use extraneous offenses under article 38.37. In the notice, the state listed two convictions Petitioner received for Sexual Assault of a Child by One in Position of Trust on October 17, 1994. (ECF No. 7-3 at 82.) The State also listed allegations of sexual assault from four other girls, occurring between 1985 to 1993, but which never resulted in criminal convictions. (*Id.* at 82-83.)

At trial, defense counsel objected to the admitting to evidence of the Colorado criminal convictions, arguing that the only convictions recognized by article 38.37 were the Texas crimes listed in the statute. Trial counsel also argued that admitting the convictions violated Petitioner's right to due process and a fair trial under the U.S. Constitution. The court overruled the objections and evidence of the convictions was admitted under article 38.37. (ECF No. 7-10 at 124-138.)

At a recess during the first day of trial, the court held a hearing on testimony the State wanted to introduce under article 38.37. The State said the first witness, Heather Standefer—who

---

[2] Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

is Petitioner's niece—would testify that in 1993, she notified authorities that when she was between 7 to 11 years old, Petitioner had touched her vaginal area numerous times, had her touch his sexual organ, took a photograph of her as she was getting into a bathtub, and provided her with alcohol. The State stated that Ms. Standefer's allegations were not prosecuted in 1993 because she told the authorities she would not be able to testify. (ECF No. 7-11 at 83-86.)

The State said that the second witness, Cassandra Parler, would testify that she was the subject of one of Petitioner's Colorado convictions and that, in 1993, Petitioner laid on top of her, rubbed his penis on her vagina until white stuff came out, and told her not to tell Petitioner's then-wife (Ms. Parler's babysitter). Ms. Parler was nine years old at the time. (*Id.* at 86-87.)

Petitioner's defense counsel objected to the testimony on several grounds. First, he objected Ms. Standefer's case was never prosecuted, the testimony was cumulative, and it would only inflame the jury and have them convict Petitioner for something that happened in 1993. Counsel further argued it should be excluded by Rule 403 because the testimony's probative value was far outweighed by its prejudicial effect and emphasized that the testimony concerned events from 20 years ago, and that the trial would end up being more about the past than the present. (*Id.* at 88-89.)

After performing the balancing test, the court overruled defense's objection under Rule 403 and found that the evidence the State was submitting would likely enable a juror to find that conduct occurred beyond a reasonable doubt. (*Id.* at 91.)

In her state habeas affidavit, Ms. Moore gave the following response to Petitioner's argument that the extraneous offense evidence was inadmissible under Rule 403:

> Appellate counsel is of the opinion that even if such an objection was made, such an objection would be useless in that the trial court had already overruled the legal objections regarding the application and constitutionality of this statute. There are

no cases addressing this issue that have held the extraneous offenses were admissible under the statute (article 38.37) but the probative value outweighed the prejudicial effect.

(ECF No. 7-28 at 140-41.) As to Petitioner's claim that she was ineffective for failing to appeal the admission of non-Texas criminal convictions, Ms. Moore responded, "[w]hile trial counsel argued well and valiantly, it was a specious and unmeritorious argument to make that the out of state conviction from Colorado was not admissible. Counsel had initially briefed this issue and after thorough research, determined the argument was untenable." (*Id.*) The state habeas court concluded that Petitioner's claim was unfounded. (ECF No. 7-29 at 301-02.)

In his instant petition, Petitioner cites two cases where Texas appellate courts stated that the remoteness of an extraneous offense significantly lessened or reduced its probative value. *See Gaytan v. State*, 331 S.W.3d 218, 226-27 (Tex. App.—Austin 2011, pet. ref'd); *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). However, in both these decisions, the appellate courts nonetheless found the extraneous offenses to be admissible under Rule 403. Further, although Petitioner argues that article 38.37 does not encompass out-of-state offenses, he points to no direct case law supporting his "strict interpretation" of the statute.

Under the Sixth Amendment, appellate counsel is not required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 286, 288. Here, Petitioner attempts to support his claims with case law that is inapposite. Accordingly, under the AEDPA's "doubly deferential" standard, the Court concludes the state habeas court's denial of these claims was not an unreasonable application of *Strickland* and denies claims 2 and 3.

11

ii.    **Ineffective Assistance of Trial Counsel (IATC)**

*3. Failure to Object to Trial Court Error in Imposing Life Sentence*

The remainder of Petitioner's claims arise from the allegedly deficient representation of his trial counsel, Scott Pawgan. In his fourth ground for relief, Petitioner argues Mr. Pawgan was ineffective when he failed to object to the trial court's decision that the elements of Petitioner's Colorado convictions were substantially similar to the charged Texas offenses.

As noted above, the State included the two Colorado convictions as enhancement paragraphs in the indictment, which if the jury found to be true, made Petitioner eligible for an automatic life sentence under § 12.42(c)(2) of the Texas Penal Code.[3] While the jury was deliberating on Petitioner's guilt or innocence, the trial court held a hearing on whether Petitioner's Colorado convictions were substantially similar to Texas offenses for purposes of enhanced punishment under § 12.42. Jeanine Hudson, the managing attorney in the Crime Records Division of the Texas Department of Public Safety (DPS), testified that her division was responsible for determining whether offenses committed under the laws of another state were substantially similar to Texas laws and that they had determined that the Colorado criminal statute Sexual Assault of a Child by One in Position of Trust was substantially similar to the Texas criminal statute Indecency with a Child by Contact. She testified that their analysis of the Colorado statute covered any offense occurring between 1990 to the present day. Ms. Hudson testified that the Petitioner's Colorado convictions were substantially similar to his Texas charges for indecency with a child by sexual contact. (ECF No. 7-13 at 41-46.)

---

[3] Section 12.42(c)(2) states in relevant part that a defendant will be punished by imprisonment in the Texas Department of Criminal Justice for life if the defendant is convicted of an offense under section 21.11(a)(1) (indecency with a child by sexual contact) and was previously convicted of an offense under the laws of another state containing elements that are substantially similar to the elements of an offense listed in Section 21.11. TEX. PENAL CODE ANN. § 12.42(c)(2) (West 2019).

On cross-examination, Pawgan asked whether the Colorado statute provided a definition for the term "sexual contact"; Ms. Hudson conceded there was none. On redirect, Ms. Hudson testified that someone in her division would have looked up the definition of sexual contact when analyzing the statute, but admitted to Mr. Pawgan she did not look up the definition herself and had no personal knowledge of it. After Ms. Hudson was dismissed, Mr. Pawgan argued there was no evidence the Colorado definition of sexual contact was in effect when Petitioner committed his crimes in 1991 and 1992. The court overruled Pawgan's objections and concluded that, based on the evidence before it, the Colorado offense of sexual assault of a child by one in position of trust was substantially similar to the charged offense in the case. (*Id.* at 46-63.)

In his affidavit before the state habeas court, Mr. Pawgan responded to Petitioner's allegations as follows:

> During the hearing, I established that there was no definition for sexual contact in the 1991 and 1992 statutes. Without that definition, it could not be established that the sexual contact in the Colorado statutes were the same as Indecency with a child by contact in Texas. I also argued this point to the trial court at the end of the hearing.
>
> Since this was a matter addressed in a hearing outside the presence of the jury, the matter was preserved for appellate review. Stating I object at the end of the hearing, when the Court made its ruling by taking Judicial Notice the statutes were substantially similar, would have been redundant and was unneeded.

(ECF No. 7-28 at 304.) The state habeas court concluded this claim was unfounded. (ECF No. 7-29 at 301-02.)

In his federal petition, Petitioner argues that Mr. Pawgan provided ineffective assistance because he should have argued that the Colorado definition of "sexual contact" was much broader than what the Texas statute encompassed, i.e. in Colorado, touching the perineum, buttocks, or pubes constitutes "sexual contact," but does not in Texas. (ECF No. 12 at 23-24.) Respondent

13

argues that Petitioner overstates the differences between the Colorado statute and notes that, under *Fisk v. State*, 574 S.W.3d 917, 922 (Tex. Crim. App. 2019), "it is unnecessary to analyze the entirety of the other state's statutory scheme for substantial similarity" when the elements of the underlying conviction are proven. As detailed previously, Ms. Standefer testified that Petitioner told her to lie down and take off her underwear and then proceeded to rub his penis over her vaginal area. Respondent argues that, under *Fisk*, this testimony is sufficient to establish substantial similarity. (ECF NO. 10 at 22-23.)

In the context of an IATC claim, trial counsel cannot be deemed ineffective for failing to make futile or unmeritorious objections. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection). Mr. Pawgan argued that the Colorado convictions were not substantially similar to the Texas offense, but the trial court found in the State's favor. As Mr. Pawgan attested, to object again would have been futile and redundant. Accordingly, the Court concludes the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### 4. Failure to Object to Admission of Extraneous Offenses

In his fifth claim, Petitioner argues that Pawgan provided ineffective assistance when he failed to object to the admission of extraneous offenses on the grounds that the offenses were not relevant to prove character conformity or to any other issue relevant to the case. These claims mirror Petitioner's claims against appellate counsel discussed above. Here, Petitioner concedes Pawgan objected to the admission of the Colorado convictions, but argues he was deficient in

14

failing to object on the grounds that the Colorado convictions did not establish character or character conformity. Petitioner again argues the convictions' remoteness diminishes their probative value. (ECF No. 12 at 27-28.)

> In his state habeas affidavit, Mr. Pawgan responded as follows:
>
> [Petitioner]'s extraneous offenses came in under Texas Code of Criminal Procedure Art. 38.37. In his writ, essentially [Petitioner] complains that decades old convictions were [too] old or remote to be able to prove character conformity. However, there is no limit on how old past convictions under 38.37 are in order to be admissible to prove character conformity. This would be an objection that would have had no recognized legal basis and would have been overruled had I made the objection.
>
> It should be noted that I made several other objections to 38.37 that were all overruled. Included in those were objections made to allow the admission of the extraneous offenses for character conformity would violate [Petitioner]'s due process rights and his right to a fair trial. So I did try to attack the conformity issue in different ways.

(ECF No. 7-28 at 304-05.) The state habeas court concluded that this claim was unfounded. (ECF No. 7-29 at 301-02.)

The Court previously analyzed these issues in the context of Petitioner's IAAC claims. Petitioner again cites the same inapposite case law which shows that, even if Mr. Pawgan had objected on these specific grounds, it is likely the trial court would have overruled his objection. Again, an IATC claim cannot be based on the failure of counsel to make futile or meritless objections. *See Miller*, 714 F.3d at 904 n.6; *Roberts*, 681 F.3d at 612; *Ward*, 420 F.3d at 498. Accordingly, the Court concludes the state habeas court's determination that this claim was unfounded is not an unreasonable application of *Strickland*, and this claim is denied.

### 5. Failure to Introduce Impeachment Testimony

In claim 6, Petitioner argues that Mr. Pawgan provided ineffective assistance when he failed to introduce testimony that would have impeached the complainant's allegations by

15

establishing a motive. Petitioner argues the complainant initially only alleged Petitioner touched her thigh. After her father discovered that Petitioner was a registered sex offender, he took the complainant to see Assistant Police Chief Garth Davis, where she again reported Petitioner had touched her thigh. However, two days later, the complainant was interviewed at the Children's Advocacy Center (CAC), and there she stated that Petitioner had rubbed her vagina on four or five occasions. The complainant also told the CAC interviewer her parents told her Petitioner was a sex offender and sexual predator, and that other children needed to be protected from him. Petitioner argues that Pawgan was ineffective when he failed to show through cross-examination that complainant had a motive for making her allegations against Petitioner, i.e. that, by doing so, she was protecting other children. (ECF No. 12 at 32-35.)

In his state habeas affidavit, Pawgan responded as follows.

It has been my experience that when questioning young children, the attorney has to be careful not to look like they [are] being [too] aggressive with the child or are beating up on the child with their inconsistent statements.

I felt at the time I finished my cross exam of the [the complainant], I had made the points that I needed to make and the jury was starting to feel I was crossing the line into beating up on the child so I needed to pass the juvenile. Also, I was getting the sense that whatever I asked the juvenile at that point, she was going to deny and then I would be spending considerable time having to impeach the child, looking further like I was beating up on the juvenile.

I had covered inconsistencies in her timeline. The State was trying to make it look sinister that [Petitioner] approached her and her sister's lemonade stand, however, I was able to show the two juveniles were not present when [Petitioner] approached the stand. I was also able to establish that [Petitioner] approached the lemonade stand it was because the stand was affiliated with a church and [Petitioner] and his wife wanted to get involved with the church.

I was even able to cover the wolf's in sheep clothing comment with the juvenile during my cross. I may not have covered the comment in as much detail as complained of in [Petitioner]'s writ, but after the juvenile had just accused me of trying to twist her words, I did not want to get bogged down looking like I was brow

beating her if she denied her mother telling her that and claimed it was her own statement. I thought I could have lost credibility with the jury if l had done that. . . .

I believe this ground of error is being alleged because [Petitioner] feels I could have further damaged [the complainant]'s credibility. Unfortunately, I think [Petitioner] lost credibility with the jury (and quite possibly whole trial) when against the advice of Counsel, he testified that the young ladies that came from Colorado were liars. I felt and told [Petitioner] that when they testified they came off to believable and credible and that the jury would not think they were outright lying. Yet, when [Petitioner] testified, he outright called them liars under the State's cross. I think there was a substantial chance the battle of credibility of his story versus the juvenile's story was lost at that point.

(ECF No. 7-28 at 305.) The state habeas court concluded this claim was unfounded. (ECF No. 7-29 at 301.)

The Fifth Circuit has held that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). "[C]ounsel has wide latitude in deciding how best to represent a client," *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003), and counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable," *Strickland*, 466 U.S. at 690. Further, because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). Thus, as long as counsel's trial strategy was reasonable, "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. Appx. 283, 292 (5th Cir. Feb. 8, 2016) (citing *Strickland*, 466 U.S. at 689).

The record supports the state habeas court's determination that Pawgan was not ineffective in his cross-examination of the complainant. In his federal petition, Petitioner argues that Pawgan's explanation of his trial strategy was "very tenuous" and should not be relied upon.

17

However, *Strickland* requires "highly deferential" judicial scrutiny of counsel's performance, specifically counseling against the temptation "for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and . . . for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or admission of counsel was unreasonable." *Strickland*, 466 U.S. at 698. What Petitioner now asks the Court to do is contrary to the holdings of *Strickland*. Accordingly, the state habeas court's determination was not unreasonable and this claim is denied.

### 6. Failure to Object to Expert Testimony

In claims 7-9, Petitioner argues that Pawgan provided ineffective assistance when he failed to object to Assistant Police Chief Garth Davis's expert testimony when Davis effectively expressed an opinion that the complainant was truthful and that children were generally truthful, and when Pawgan failed to object to Davis's testimony when Davis had not been shown to be an expert qualified to express an opinion regarding his interview with the complainant.

Regarding the testimony, Petitioner points to Davis's affirmative response to the prosecutor's following question: "In getting to the truth, are you taught to listen to certain clues or cues from the person you're talking to as to whether they're being deceptive or not?" (ECF No. 7-11 at 23.) Davis responded affirmatively, and then testified he had observed complainant's interview at the CAC, and after observing her make criminal allegations against the Petitioner, he interviewed her again the following day.

The prosecutor then asked Davis about the types of techniques he used to discover deception during interviews: "What kind of sensory things do you look for, if you would explain that term to the jury?" Davis responded as follows:

Well, anyone, when they're in any sort of situation, has a lot more senses than just hearing. So what we had at the interview was an allegation of touching, "He touched me." I wanted to know what—the other things that had occurred there when that happened. What did you hear, what did you feel, what did you see, what did you smell? Because if someone is not telling the truth, those are not things that you think about incorporating into an untruth. You're just going to say so and so did this.

When I ask you further first about what did you see, hear, smell, taste, touch, those are things that you haven't thought about before. You incorporate those into something that didn't happen. So I wanted to interview the child and find out those, find out exactly how that occurred and what she remembered about those incidents.

(*Id.* at 38-39.) Davis then testified that complainant expressed many of those sensory cues during his interview with her, which he considered significant. Finally, towards the end of this line of questioning, Davis testified "In my experience, children are pretty good at telling the truth." (*Id.* at 39-41.) Petitioner argues that this line of questioning was inadmissible because it decided an ultimate fact issue for the jury, i.e. that the complainant was telling the truth.

In his state habeas affidavit, Pawgan responded to Petitioner's allegations:

All three of the above grounds for review revolve around the testimony of Investigator Davis, and his testimony regarding [the complainants]'s sensory perceptions and whether that made her testimony more believable or not believable. I did not object to this line of testimony because I felt it would ultimately lie to the defenses benefit.

I was aware from the first trial,[4] that there were many sensory details that [the complainant] was unable to give. Things such as what made [Petitioner] stop touching her. Was there a sound or was there someone coming into the room or was there a movement? [The complainant] could not give these sensory details. [The complainant] also could not recall anything at all the [Petitioner] said.

The one additional sensory detail that Inv. Davis did mention [the complainant] gave him, in the trial, was hearing [Petitioner] come into the room she was sleeping in. However, I [knew] from the first trial that this sensory detail was never mentioned. I got Inv. Davis to admit under cross that the first time it was ever mentioned [the complainant] heard [Petitioner] enter the room, was at the second trial. I felt that would show to the jury, that he was adding additional details to try to

---

[4] It appears from the state court records that the first trial mentioned here by counsel ended in a mistrial after the jury was unable to reach a verdict.

bolster the sensory details [the complainant] perceived and thus weaken the credibility of [the complainant]'s story.

If [Petitioner] raised these points of error because he thought he was convicted because the lack of objection bolstered [the complainant]'s credibility, then I believe he is wrong. Once again, as discussed above, I believe the issue of [Petitioner]'s credibility versus the credibility of [the complainant] was lost when against counsel's advice he called the young ladies from Colorado liars.

(ECF No. 7-28 at 306-7.)

Under Texas Rule of Evidence 702,[5] expert witnesses are allowed to testify that a complainant exhibited symptoms or behaviors consistent with sexual abuse but are prohibited from testifying that a witness is truthful or telling the truth. *Yount v. State*, 872 S.W.2d 706, 708-09 (Tex. Crim. App. 1993). A direct opinion as to the truthfulness of a witness "crosses the line" under Rule 702 since "it decides an issue for the jury" whose role is to draw conclusions about the credibility of a witness. *Id.*, *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

Petitioner argues that Davis's testimony "essentially expressed a belief that the complainant was sexually abused." (ECF No. 12 at 41.) Petitioner also argues that Davis's qualifications as an expert were "cursory and therefore insufficient" and that Pawgan was ineffective for failing to challenge his qualifications. However, as discussed in the prior section, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*, 343 F.3d at 752-53. As Pawgan attested, he did not object to Davis's testimony because he believed it would ultimately benefit the defense. And while Petitioner argues Davis's testimony violated Rule 702, he fails to show what prejudice resulted from Pawgan's alleged deficiency in failing to object to the testimony. *See Strickland*, 466 U.S. at

---

[5] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702.

694 (to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.") Accordingly, the Court concludes that state habeas court's denial of these claims was not unreasonable and claims 7-9 are denied.

### 7. Failure to Object to State's Improper Closing Argument

In Petitioner's last claim for relief he argues that Pawgan provided ineffective assistance of counsel when he failed to object to the prosecutor's numerous improper comments during closing argument. Specifically, Petitioner argues that the prosecutor improperly suggested throughout closing that Petitioner had committed other sexual assaults against children and insinuated that Petitioner had committed other sexual assaults between the Colorado convictions and the instant offense. Petitioner points to the following remarks:

> Please do not acquit a career predator for some bad parenting choices. Dismiss that theory for exactly what it is, because I tell you what. The conman, the liar in this room, is sitting right here. And he's been conning and lying for the least 30 years, family after family, child after child. And now he wants to hide behind that con and that lie and ask you to believe him.

> He is a liar and he's been lying for a very long time. And now the defense wants to ask you to give him credit for the fact that the last several years since he's been out of prison, you didn't hear any evidence of it happening to anyone other than [the complainant]. Remember [Ms. Standefer]. Maybe those girls didn't have voices either. Maybe he was good at silencing some.

> And we listened to the testimony of [the complainant]. And we know what [the Petitioner] did to her just like we know what [he] did years ago to many other children.

(ECF No. 7-13 at 31, 39.) In his state habeas affidavit, Pawgan responded as follows:

> The improper arguments [Petitioner] complains of counsel not objecting to I believe were objections that if made very well may have been overruled and would not have benefitted the defense making and getting overruled. There was convictions in Colorado for a sexual crime against a minor that were from the 1990's. As discussed above, Texas Code of Criminal Procedure Art. 38.37

21

specifically allows the State to argue that [Petitioner] was acting in conformity with his character. If I objected to the complained of arguments, the state would have been able to argue the argument was legal based upon 38.37.

I felt there was nothing to be gained by continually objecting and getting overruled. I felt doing that would signal to the jury that we feared that argument and the only reason to fear the argument is if it was true.

(ECF No. 7-28 at 306.) The state habeas court concluded this claim was unfounded. (ECF No. 7-29 at 301-02.)

On federal habeas review, a petitioner must show that a prosecutor's improper arguments "so infected the penalty phase of the trial with unfairness as to make the resulting sentence a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quotations and brackets omitted); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986). As previously noted, in the context of an IATC claim, trial counsel cannot be deemed ineffective for failing to make futile or unmeritorious objections. *See Miller*, 714 F.3d at 904 n.6; *Roberts*, 681 F.3d at 612; *Ward*, 420 F.3d at 498. Pawgan attested he believed any objections to the prosecutor's closing argument would have been overruled in light of article 37.38. Petitioner argues that Pawgan's statements that any objections would have been overruled is wrong and, presumably, should not be given any deference. Despite Petitioner's arguments to the contrary, *Strickland* requires deference to trial counsel's strategic decisions and Petitioner fails to show that the state habeas court acted unreasonably when it rejected this claim. Accordingly, this claim is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate

of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.


SIGNED this 24th day of July, 2020.


_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE
23